UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

LINDSEY ADELMAN STUDIO LLC, a
New York limited liability company, LINDSEY
ADELMAN, individually,                                                    Civil Action No. 18-cv-8146

      Plaintiff,

vs.

STILNOVO LLC, a New York limited
liability company; FROOOGAL, LLC, d/b/a
FRANCE AND SON, a New York limited
liability company; and
WEN CHIN WU, a/k/a Kevin Wu,

      Defendants.
_____

## COMPLAINT

    Plaintiffs, Lindsey Adelman Studio LLC, and Lindsey Adelman, individually, sue

Defendants, Stilnovo LLC, Frooogal, LLC, d/b/a France and Son, and Wen Chin Wu, a/k/a Kevin

Wu, and in support thereof, state as follows:

### INTRODUCTION

    1.    This action seeks injunctive relief and damages arising from Defendants' intentional

and calculated infringement, copying and passing off of Plaintiffs' renowned and highly acclaimed

lighting design products.  Plaintiffs own the famous LINDSEY ADELMAN STUDIO  trademark

and brand, and are the exclusive sellers and distributors of Lindsey Adelman lighting designs, their

associated marks and indicators of origin.

    2.    Lindsey Adelman is a famous designer, specializing in modern, cutting edge lighting

design products, and has been widely recognized as a "tastemaker" in the field of interior and

lighting design.  Lindsey Adelman Studio sells cutting edge light fixtures designed by Lindsey

Adelman and other in-house designers, such as chandeliers, standing lamps, desk lamps, hanging

lamps, wall lamps, and sconces.

3.      Since at least 2006, with her first sales in commerce, Lindsey Adelman has specialized in elevated light design and lighting products.  Founded in 2006, Lindsey Adelman Studio has showroom locations in North America and wholesale partnerships in Europe and Asia, all devoted to the creation, sale and distribution of LINDSEY ADELMAN STUDIO-branded lighting.

4.      Lindsey Adelman Studio's lighting creations have developed iconic status among the interior design community and consuming public.  Lindsey Adelman Studio collections are characterized by industrial modular design elements and have been exhibited at famous art houses and design museums, including the Cooper-Hewitt National Design Museum, Design Miami, Nilufar Gallery, Smithsonian Design Museum, and BBDW Gallery, among others.

5.      Lindsey Adelman Studio's products reached iconic status in 2006 soon after release of its inaugural product, the *Branching Bubble* chandelier, which is famous.  The *Branching Bubble* chandelier, and other LINDSEY ADELMAN-branded products, are instantly recognizable among the relevant consuming public.  The *Branching Bubble* chandelier combines the organic nature of blown glass with other linear components to create a unique sculpted visual of branching cylinders bubbling at end-points with hand-blown glass lighting elements.  These distinctly designed fixtures have become a must-have item among a high-end segment of the consuming public.

6.      Customers of the *Branching Bubbles* chandelier include style and arts trend-setters and A-list celebrities.  The product has been featured in many glossies, style, pop culture, and trade publications.  It has also been recognized and displayed in leading art houses and design museums for its unique lighting design aesthetic.

7.      Due to the acclaim and status that Lindsey Adelman Studio designs have achieved, including but not limited to the *Branching Bubble* systems, Defendants have embarked on a dedicated and widespread campaign of imitation and copying of Plaintiffs' products.  Defendants source and sell cheap imitations and copies of authentic Lindsey Adelman Studio designs in an

effort to pass off their inferior knock-offs as authentic products, intending for segments of the public to believe that the goods sold by Defendants are in fact authentic LINDSEY ADELMAN STUDIO-branded products, when in fact they are cheap copies of much inferior quality.

8.      Defendants have gone so far as to utilize the LINDSEY ADELMAN trademark on their websites, including the names of specific Lindsey Adelman Studio designs (e.g., *Branching Bubbles* and *Agnes*), in their effort to mislead, suggest affiliation, sponsorship and common origin between their inferior copies and authentic LINDSEY ADELMAN STUDIO-branded products.

9.      Defendants aggressively seek to trade off of the invaluable goodwill cultivated by the Lindsey Adelman Studio through its team's countless hours of arduous design, labor, and investment of resources.   Further evidence of Defendants' intent to trade off of the goodwill exclusively residing in Plaintiffs is seen in their Google key-word and ad-word purchases which mimic Plaintiffs' marks and collections, while linking to photographs of genuine LINDSEY ADELMAN STUDIO products and sometimes to inferior, apocryphal copies on websites and social media outlets.   Defendants make no effort to disguise their intent to pirate and usurp the intellectual property and goodwill residing in Lindsey Adelman Studio and Lindsey Adelman, individually and indeed have a search element for "Lindsey Adelman" in Defendants sites.

10.      Defendants' conduct is causing confusion among the consuming public and third parties who observe Defendants' imitations, unaware that the lower quality copies sold by Defendants are not authentic designs originating from Lindsey Adelman Studio.   As a result of their willful misconduct, Defendants are causing irreparable harm and dilution to the intellectual property rights owned by Plaintiffs, and the invaluable goodwill residing in Plaintiffs' marks.   Unless enjoined, Defendants will continue their illegal predatory business practices of trading on Plaintiff's protected marks, while underselling Plaintiffs through the sale of inferior imitation products.

Defendants are causing grievous damage to Plaintiffs, and due to the intentional unlawful conduct complained of herein, Plaintiffs are also entitled to an award of damages.

**JURISDICTION AND VENUE**

11.     This is an action for infringement under the trademark and unfair competition laws of the United States (15 U.S.C. §§1114 and 1125), alleging infringement of Plaintiff's trademarks, protected trade dress, trademark dilution, common law unfair competition, and other violations of law, as detailed below.

12.     Jurisdiction is conferred on this Court by 15 U.S.C. 1121 and 28 U.S.C. 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367 over all state law claims derived from a common nucleus of operative facts.  Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b).

13.     Defendant, Stilnovo LLC ("Stillnovo"), is a limited liability company doing business under the laws of the State of New York, with its principal place of business in Nassau County, New York at 2 Meadowbrook Road, Syosset, NY 11791.  Defendant, Stilnovo, owns and operates the website www.stilnovousa.com, from which Defendant, among other things, sells lighting designs that violate Plaintiff's intellectual property rights.

14.     Defendant, Stilnovo is conducting business in this District, and has committed the acts which are the subject of this action within this District.  Stilnovo engages in the solicitation of business in the State of New York, derives substantial revenue from products sold in the State of New York, and has committed the acts alleged herein that have caused (and continue to cause) injury to Plaintiffs within the State of New York.  In short, Stilnovo's acts confer *in personam* jurisdiction over it within the State of New York.

15.     Defendant, Frooogal, LLC, d/b/a France and Son ("France and Son"), is a limited liability company existing under the laws of the State of New York, with its principal place of

business in New York County, New York.  Defendant, France and Son, conducts substantial and not isolated business in what it calls its "flagship store" located at 122 W. 18th Street, New York, NY 10011.  France and Son owns and operates the website www.franceandson.com, from which the Defendant, among other things, sells lighting designs that violate the Plaintiff's property rights.

16.     Defendant, France and Son is conducting business in this District, and has committed the acts which are the subject of this action within this District.  Defendant, France and Son engages in the solicitation of business in the State of New York, derives substantial revenue from products sold in the State of New York, and has committed the acts alleged herein that have caused (and continue to cause) injury to Plaintiffs within the State of New York.  In short, Defendant, France and Son's acts confer *in personam* jurisdiction over it within the State of New York.

17.     Upon information and belief, Defendant, Wen Chin Wu, a/k/a Kevin Wu ("Wu"), is an individual having an office and place of business at France and Son and Stilnovo, resides in Nassau County at 2 Meadowbrook Road, Syosset, NY 11791, is a licensed CPA in the State of New York and is the conscious, dominant and active force behind the wrongful acts of Defendants, France and Sons and Stilnovo; which wrongful acts he has engaged in for the gain and benefit of Defendants, France & Co and Stilnovo, and for his own individual gain and benefit.  Defendant, Wen Chin Wu, a/k/a Kevin Wu, is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

18.     Defendant, Wu, is conducting business in this judicial District, and has committed the acts which are the subject of this action within this District.  Defendant Wu, engages in the solicitation of business in the State of New York, derives substantial revenue from products sold in the State of New York, and has committed the acts alleged herein that have caused (and continue to cause) injury to Plaintiffs within the State of New York.  In short, Wu's acts confer *in personam* jurisdiction over him within the State of New York.

19.     Plaintiff, Lindsey Adelman Studio LLC, is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business in New York County, New York.  Plaintiff, Lindsey Adelman Studio, is the exclusive entity through which artist and designer Lindsey Adelman, along with other in-house designers, creates and sells LINDSEY ADELMAN STUDIO-branded renowned lighting fixtures.

20.     Plaintiff, Lindsey Adelman, is an individual residing in Kings County, New York, and is otherwise *sui juris*.  Plaintiff, Lindsey Adelman, is a renowned and a highly acclaimed lighting designer.

### LINDSEY ADELMAN'S RISE TO DESIGN PROMINENCE

21.     Plaintiff, Lindsey Adelman, completed her studies in Industrial Design at the Rhode Island School of Design, and soon after, in 1996, began her focus on interior lighting designs.

22.     Since 1996, Plaintiff Lindsey Adelman has specialized in lighting design and creating unique, fixed lighting concepts and installations for indoor use.  Lindsey Adelman sold her first lighting products under the trademark LINDSEY ADELMAN in 2006 and has continuously designed, sold, marketed and refined LINDSEY ADELMAN-branded lighting products under the LINDSEY ADELMAN trademark and later under the LINDSEY ADELMAN STUDIO trademark.

23.     Although unregistered, the LINDSEY ADELMAN mark, through over 20 years of continuous use, has become famous and synonymous with high quality and uniquely designed lighting fixtures.

24.     The LINDSEY ADELMAN STUDIO trademark was registered in the United States Patent and Trademark Office on February 20, 2018, Registration No. 5,407,182, and through over 12 years of continuous use, has become famous and synonymous with high quality and uniquely designed lighting fixtures.  Among designers and consumers of high-end interior design, Plaintiffs

are known for the highest quality and artistry in their original modern interior lighting products sold under the LINDSEY ADELMAN STUDIO and LINDSEY ADELMAN trademarks.

25.     Lindsey Adelman Studio specializes in utilizing raw materials to produce hand-crafted sculptural lighting systems.  Each piece is hand-crafted, and individually-made, and can take several months to complete.  As a result of the work and craftsmanship inherent to Lindsey Adelman products, most sales are conducted via special appointments.

26.     The inaugural product launched by Lindsey Adelman Studio in 2006 remains its most iconic: the *Branching Bubble* chandelier system.  The *Branching Bubble* system became famous and is instantly recognizable among the relevant consuming public as being an iconic product of the Lindsey Adelman Studio.  It combines the organic nature of blown glass with other linear components to create a unique sculpted visual of branching narrow cylinders bubbling at end-points with blown glass lighting elements.  Below is an example of the design:



27.     This distinct product, sold under the distinctive LINDSEY ADELMAN, LINDSEY ADELMAN STUDIO and (unregistered) BRANCHING BUBBLES trademarks has become a must-have item among a distinct high-end segment of the consuming public, which includes style and arts

design trend setters and A-list celebrities.  The *Branching Bubbles* system  and other of LINDSEY ADELMAN STUDIO-branded products have been featured in many artistic, design, cultural, and trade publications.  *Branching Bubbles* systems  have been recognized and displayed in leading art houses and design museums for their lighting design aesthetic.

28.    Indeed, a January 2016 issue of *WSJ Magazine* described Ms. Adelman as having "set a standard for success that many American designers dream of reaching."   Attached as Composite *Exhibit* A are copies of the press articles and clippings cited herein as to Plaintiffs' lighting designs and acclaim in the field of lighting and interior design.

29.    The *Branching Bubble* design system is not a common lighting design, nor a mere refinement of a commonly adapted or well-known form of ornamentation for lighting fixtures but an original creation of Lindsey Adelman's.  It is unique and unusual in the field of lighting design and is distinctly associated with Plaintiffs as the originators and sellers of these finely crafted pieces.

30.    In the years since Lindsey Adelman Studio first began producing the *Branching Bubble* system, the pieces have become, as both *W Magazine* and *Vogue Living* described them, a "design status symbol." *See Composite Exhibit "A"* attached hereto.

31.    Lindsey Adelman Studio has spent countless hours, and resources valued in the millions of dollars on promotion and advertising prominently featuring the *Branching Bubble* design, and other Adelman designs, emphasizing their unique and distinctive appearance.

32.    The *Branching Bubble*  system has become popular among celebrities and other high-end consumers, and numerous articles have profiled the development and success of the *Branching Bubble* design collection.

33.    The result of the studio's efforts is that the public connects the *Branching Bubble* chandeliers to the Lindsey Adelman Studio, and to Ms. Adelman personally.   This point is underscored by numerous unsolicited articles lauding Ms. Adelman's *Branching Bubbles* system

and other design achievements, a small sample of which is attached at *Composite Exhibit* "A" hereto.

34.     As a few examples, an entry on the website "The Future Perfect" (www.thefutureperfect.com) describes Ms. Adelman and her work as follows:

> Just over a decade since founding her namesake studio, Lindsey Adelman has become one of America's most influential tastemakers. A piece of Lindsey Adelman lighting is instantly recognizable for its pop sensibility, shape-shifting forms and ingenious use of raw materials. Playful, collaborative, and romantic, key collection pieces range from vine-like fringed wall lights to Adelman's seminal branching blown glass "Bubble" chandeliers. A Lindsey Adelman chandelier is one of a kind.

35.     In the May/June 2017 issue of *Luxe* magazine, it stated the "Bubble" chandeliers "have become something of an icon...."

36.     The August 1, 2017 issue of *The Cut* magazine stated that "...in demand Adelman is best known for her sculptural, blown-glass-and-brass Branching Bubble chandeliers, which take up to 24 weeks to complete. As clients will tell you, they're well worth the wait...."

37.     In the June 15, 2016 issue of *W* magazine, it described Lindsey Adelman Studio as follows:

> Since making the first one, about 10 years ago, Lindsey Adelman has watched her Branching chandelier, with its handblown glass globes budding from a sinewy, multipronged glass stem, become a design status symbol - and a fixture in splashy shelter-magazine spreads.

38.     In the April 13, 2017 issue of *The Hollywood Reporter* magazine, under the heading "Ultimate Décor Object of Desire," one of the entries refers to "Bubble chandelier by Lindsey Adelman", stating as follows:

> 'There's a real wow factor wherever it's hung,' says Trip Haenisch, designer for Hank Azaria and WME's Patrick Whitesell, of Adelman's Branching Bubble lighting series, which possibly is the most celebrity-owned fixture in Hollywood. 'It's a work of art, romantic and transitional, that works equally well in modern and traditional homes.' At Adelman's newly opened Arts District outpost, there's a 24-week

production lead time for the pieces, which have been hung by Gwyneth Paltrow, Reese Witherspoon, and Jon Hamm ($9,000.00 to $30,000.00).

39.     The May 6, 2017 issue of *Vogue* described Ms. Adelman's designs as "The lighting collection that belongs on your wish list," and further stated: "Instantly recognizable, each piece from the famed Lindsey Adelman Studio is an iconic statement of lighting design."   It then highlights, through photographs, three of "the most desired chandeliers from her latest collection," one of which was from the *Branching Bubble* collection.

40.     Among other places, Ms. Adelman's work has been exhibited at the Smithsonian Design Museum, the Cooper Hewitt National Design Museum, and Design Miami.   Further, the *Branching Bubble* systems have been sold at BBDW in New York, the Nilufur Gallery in Milan, and through high-end sellers and showcases in cities such as London, Paris, Hong Kong, Toronto, and Vancouver.

## THE LINDSEY ADELMAN MARKS AND PROTECTED TRADE DRESS

41.     On February 20, 2018, Lindsey Adelman Studio obtained a trademark registration from the United States Patent & Trademark Office for the LINDSEY ADELMAN STUDIO trademark, Reg. No. 5,407,182, a copy of which is annexed hereto as *Exhibit B*.

42.     In addition to the registered LINDSEY ADELMAN STUDIO trademark, Plaintiffs' utilize other inherently distinctive marks and indicators of origin in the sale of Lindsey Adelman designed light fixtures which are inherently distinctive, and have otherwise acquired secondary meaning among in the interior designers and consumers of high end interior design products.

43.     Plaintiffs' marks, which are inherently distinctive and have obtained secondary meaning, include the registered LINDSEY ADELMAN STUDIO mark and unregistered marks, such as LINDSEY ADELMAN, BRANCHING BUBBLE, among others, and are collectively referred to as the "Lindsey Adelman marks".

44.     Among the Lindsey Adelman marks, the *Branching Bubble* design and product line, bearing distinctive features are protected trade dress that indicate source of origin from Plaintiff, and has acquired secondary meaning, as underscored by the consuming public's connection of the *Branching Bubble* design lighting system to Plaintiffs.

45.     The Lindsey Adelman marks, including the *Branching Bubbles* trade dress, have come to be associated with lighting designs containing critically acclaimed artistry and the best-quality craftsmanship originating from Plaintiffs.  Because of Lindsey Adelman's accomplishments in pushing the boundaries of artistry, the use of space in lighting design, and the recognition achieved by Lindsey Adelman in her field, LINDSEY ADELMAN-branded products have become status symbols and "must-have" pieces among the exclusive clientele of high-end interior designers servicing a unique segment of the consuming public.

46.     Due to the countless hours and invaluable resources Plaintiffs have devoted to the creation, promotion, sale, and development of LINDSEY ADELMAN-branded products, substantial good will has been created and resides within the Lindsey Adelman marks.  The goodwill residing in the Lindsey Adelman marks does not lend itself to easy quantification, but has acquired substantial value.

47.     The goodwill residing in the Lindsey Adelman marks has been recognized internationally as well.  On November 21, 2017, Lindsey Adelman Studio was granted a trademark registration for the LINDSEY ADELMAN STUDIO trademark for lighting fixtures in the 28 cooperating countries of Europe from the European Union Intellectual Property Office. Lindsey Adelman Studio has also been granted trademark registrations for the LINDSEY ADELMAN STUDIO trademark in Hong Kong and Japan.

**DEFENDANTS' INFRINGEMENT AND PIRACY OF PLAINTIFFS' GOODWILL**

48.     Defendants, under the direction and control of Defendant Wu, are engaged in a pattern of intentional infringement trading off of the goodwill residing in the Lindsey Adelman marks.  Defendants have succeeded in generating substantial sales of inferior products, through a concerted strategy that draws customers by utilizing the Lindsey Adelman marks, designs and other indicators of origin.

49.     Each of Defendants' websites sell imitations of Lindsey Adelman designs and incorporate Lindsey Adelman marks to drive sales and traffic to their respective sites.  As part of their campaign of infringement and piracy, Defendants utilize protected Lindsey Adelman marks in the metatags and sponsored ad-words to optimize their placement on internet search engines (such as google.com), and to receive prominent top-of-the-page placement as a "sponsored" seller of goods featuring the Lindsey Adelman marks.

50.     For example, google searches for terms such as "Lindsey Adelman," derivatives of "Lindsey Adelman", and Adelman design collections such as "*Branching Bubble*" and "*Agnes*" appear without fail as sponsored links to Defendants' pages. See composite *Exhibit C* reflecting Google Searches for "*Branching Bubble*", *Cherry Bomb* and "*Agnes.*"

51.     When Defendants' sponsored pages appear, often displayed prominently with those links are images of inauthentic copies of Lindsey Adelman designs for sale by Defendants at a fraction of the price consumers pay for authentic Lindsey Adelman lighting designs.

52.     Upon information and belief, Defendants sometimes display authentic images of Lindsey Adelman lighting designs in promotion of their infringing sales.  Defendants display of authentic Adelman designs is unauthorized and part of their widespread misappropriation and

infringement of the Lindsey Adelman marks, as Defendants are not authorized resellers of Plaintiffs' products, and do not otherwise deal in authentic Lindsey Adelman goods.

### Stilnovo

53.     On the www.stilnovousa.com website, Defendants, Stilnovo and Wu, are selling numerous products intended to mimic the Lindsey Adelman Studios collection.   Defendants have knockoffs from at least four of Plaintiffs' collections:   the *Agnes* collection, the *Knotty Baubles* collection, the *Cherry Bomb* collection, and the *Branching Bubble* collection.

54.     In selling their infringing goods, Defendants employ fanciful names in an apparent attempt to evoke an international flair for the items, and presumably in an attempt to differentiate them from the Lindsey Adelman Studio designs.

55.     Specifically, on the www.stilnovousa.com website, Defendants, Stilnovo and Wu, are selling several versions of what they call a "Stven Chandelier."   The "Stven" chandeliers are substantially similar to pieces in the Branching Bubble collection.   Below is an example of the "Stven":



Stilnovo
Stven Chandelier [LM7307PBLK]
$1,655.55

56.     On the www.stilnovousa.com website, Defendants, Stilnovo and Wu, are also selling several versions of what they call a "Steno Chandelier."   The "Steno" chandeliers are also

substantially similar to pieces in the *Branching Bubble* collection. Below are two examples of the "Steno":



Stilnovo
Steno Chandelier [LM7309PBLK]
$1,784.25

Steno Chandelier[LM7309]
$1,784.25

57.     Other times, Defendants employ names derived from authentic Lindsey Adelman collections in an even more brazen attempt to directly steer customers to their cheaper facsimiles.

58.     On the www.stilnovousa.com website, Defendants Stilnovo and Wu, sell several versions of what they call a "Branch Ceiling Lamp" and a "Branching Ceiling Lamp." The "Branch Ceiling Lamp" and the "Branching Ceiling Lamp" are substantially similar to pieces in Plaintiffs' Branching Disk  collection.  In the description of the "Branching Ceiling Lamp," Defendants state, "Unlike tree branches that provide shade, this branching ceiling lamp will reach across and illuminate your space." Two examples of the " Branch Ceiling Lamp" are depicted below:



Stilnovo
Branch ceiling lamp [LS1221S5WTH]
$1,070.55 S

Stilnovo
Branch Ceiling Lamp - 9 [LS1221S9WHT]
$1,753.05

59.     On www.stilnovousa.com, Defendants, Stilnovo and Wu, sell several versions of what they call a "Packhusgrand Chandelier."   The "Packhusgrand" chandeliers are substantially similar to pieces in the *Branching Bubble* collection. Below is an example of Defendants' "Packhusgrand" chandelier:



Stilnovo
Packhusgrand Chandelier [LM7303PGOLD]
$711.75

60.     Defendants, Stilnovo and Wu, also sell knock-off versions of the *Branching Bubble* collection under what they call a "Stige Ceiling Lamp."  The "Stige" ceiling lamps are substantially similar to pieces in the *Branching Bubble* collection.  Below is an example of the " Stige" ceiling lamp:



Stilnovo
Stige Ceiling Lamp [LM7306PBLK]
$1,363.05

61.     Defendants Stilnovo and Wu are selling the knockoffs at price points significantly lower than the price Lindsey Adelman Studio charges for the same pieces.

### France and Son

62.     Defendants, France and Son and Wu also sell knockoffs of Plaintiffs' pieces on their website, www.franceandson.com.   Several of those items are knockoffs of pieces in Plaintiffs' "*Agnes collection*."  But as an apparent nod to the original designer, Defendants have named those pieces "Agnes Chandeliers." Below are two of the examples available on Defendants' website:



France&Son                                                    Astral Anges
Chandelier                        Agnes Chandelier
Twelve Bulb Branching Chandelier            Fourteen Bulb- Modern Branching Lamp
$399.00 USD                                 $949.00 USD

63.    On the www.franceandson.com website, Defendants sell several versions of what they call a "Six Globe Branching Ceiling Lamp."  In the product description, the defendants state as follows:

> This gorgeous, organically shaped ***branching bubble*** chandelier will be an attention grabber in any space.  The super contemporary design features tinted glass bubbles of varying sizes that are secured to the ends of long, elegantly shaped metal branches.

https://www.franceandson.com/collections/ceiling-lamps-chandeliers/products/modern-six-globe-branching-ceiling-lamp-black1016 (last visited August 3, 2018) (emphasis added).  The "Six Globe Branching Ceiling Lamps" are substantially similar to pieces in the *Branching Bubble* collection.

64.    In addition to the "Six Globe" Branching Ceiling Lamps, on the www.franceandson.com website, the Defendants France and Son and Wu also sell, among other items, the following knockoffs:

a.    "Modern Seven Globe Branching Chandeliers";

b.      "Seven Globe Branching Ceiling Lamps";

c.      "Nine Globe Branching Vine Ceiling Lamps";

d.      "Five Globe Branching Ceiling Lamp"; and

e.      "Three Globe Branching Ceiling Lamps."

As to each of the items listed in this paragraph, Defendants utilize the same "*branching bubble*" phrase in each of the product descriptions corresponding to the items listed above.

65.      In describing its "Branching Fixtures and Lamps" collection, France and Son and Wu state as follows:

> This collection of branching lighting features a ***branching bubble*** design and an LED Anges design.  All these fixtures have adjustable branches that can be swiveled at the given pivot points to create a unique look for every installation.  The organic design of these branching fixtures looks equally great off as it does on.  These modern lighting designs come in various sizes and finishes, so we have something to fit a space of any size.  Our modern branching lighting is made with the highest quality materials and a close attention to detail.

66.      Defendants France and Son and Wu have tagged several of the pages on their website by using the Adelman name.  Specifically, on the Branching fixtures and lamps page, it is tagged "Lindsey Adelman inspired."  Further, Defendants France and Son and Wu are selling what they call "Lindsey Extensions 10" Brass."  These are brass extensions to be used for making your own light fixture.  That same page is tagged "Lindsey Brass Extensions." https://www.franceandson.com/products/linsey-adelman-extensions-10-brass4428      (last visited August 3, 2018)

67.      Defendants France and Son and Wu are selling the knockoffs at price points significantly lower than the price Lindsey Adelman Studio charges for the same pieces.

**Examples of Infringement and Demand to Defendants**

68.     Defendants' business model is to mimic Plaintiffs' famous and acclaimed lighting designs as closely as possible, promote, and sell their inferior copies at reduced prices, while incorporating the Lindsey Adelman marks, or confusing derivatives of the marks, in their effort to drive sales and traffic to Defendants' websites which are owned and/or controlled by Wu.  Attached as *Exhibit "D"* are side by side comparison images taken from Defendants' websites that show the flagrant copying by Defendants of sixteen (16) famous original Lindsey Adelman Studio lighting design products.  Defendants utilize the Lindsey Adelman marks in the sale, promotion, and marketing of their copies.

69.     On or about May 21, 2018, Plaintiffs sent a notice to the website host of Stilnovo to inform it that Stilnovo was selling copies of, among other items, pieces from the *Branching Bubble* collection, and otherwise infringing upon the Lindsey Adelman marks.  A copy of the Notice is appended hereto as *Exhibit "E"*.

70.     In response to the notice, Defendants, Stilnovo and Wu, claimed to have taken down and removed from their website the offending items.

71.     However, on further investigation, Defendants Stilnovo and Wu have resumed almost immediately offering the same items for sale on their website.  Defendants renamed some of the items, and added new knockoffs under new names.  Upon further inquiry, Plaintiffs learned that while Defendants removed some of the items from the website, they are still offering those items for sale.  If a consumer had a SKU number from a screenshot from when the website was selling one of the items, he or she could still purchase the item from Defendants, Stilnovo and Wu, by sending an e-mail to place an order or through online chat support.

72.     Both the Stilnovo and France and Son products are mass-manufactured in China, and are of inferior quality to the Lindsey Adelman Studio pieces.

73.     The sale and marketing of these knockoffs by Defendants Stilnovo, France and Son, and Wu, which trade upon, and incorporate the Lindsey Adelman marks, are causing substantial damage to the Lindsey Adelman Studio brand and business.  Consumers and members of the public are likely to be confused between authentic Lindsey Adelman Studio products from Plaintiffs and those offered by Defendants as to source, origin, sponsorship, and affiliation.  Defendants intend to create such confusion, and have profited handsomely as a result of their calculated effort to draw a close affiliation between their good and the Lindsey Adelman marks.

74.     Plaintiffs have performed all conditions precedent to bringing this action, or said conditions have been excused or waived.

75.     Plaintiffs have engaged undersigned counsel to represent them in this action, and have agreed to pay counsel a reasonable fee for their services.  Plaintiffs demand payment of their attorney fees in this action pursuant to federal and state law, as applicable.

### COUNT I - TRADEMARK INFRINGEMENT

(Trademark Infringement pursuant to 15 U.S.C. §1114 against all Defendants)

76.     Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

77.     This claim arises under 15 U.S.C. §1114 for infringement of a trademark registered in the United States Patent and Trademark Office.

78.     On February 20, 2018, Lindsey Adelman Studio obtained a trademark registration from the United States Patent & Trademark Office for the LINDSEY ADELMAN STUDIO trademark, Reg. No. 5,407,182. *See Exhibit B.*

79.     The LINDSEY ADELMAN STUDIO trademark is inherently distinct and has come

to identify, in the United States and throughout the world, high quality lighting designs and products originating from Plaintiffs.

80.    The LINDSEY ADELMAN STUDIO trademark has also acquired secondary meaning among interior designers and consumers of high end interior design products who associate the registered mark with the high quality products produced, designed, marketed and sold by Plaintiffs.

81.    Plaintiffs have used the LINDSEY ADELMAN STUDIO trademark in connection with their high quality lighting and design products since at least 2006.

82.    Defendants, with full knowledge of the fame and reputation of the LINDSEY ADELMAN STUDIO trademark, have intentionally, knowingly and willfully infringed upon the trademark by manufacturing and/or selling products bearing marks confusingly similar to the LINDSEY ADELMAN STUDIO trademark without consent or permission of Plaintiffs, in order to deceive purchasers as to the origin and source of its products.

83.    Defendants have displayed, sold, and advertised (for sale) inferior lighting products and copies of Lindsey Adelman Studio-designs bearing, or by utilizing, marks confusingly similar to the LINDSEY ADELMAN STUDIO trademark.  These items in fact were not designed, sold, or distributed by, or pursuant to the authorization of Plaintiffs.

84.    Defendants' use of marks which are confusingly similar to the LINDSEY ADELMAN STUDIO trademark is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that the goods sold by Defendants are authorized, sponsored or approved by Plaintiffs when, in fact, they are not and never have been.

85.    By reason of Defendants' use of marks confusingly similar to the LINDSEY ADELMAN STUDIO trademark, in the course of selling their products, without obtaining the

authorization of Plaintiffs, Defendants have infringed upon Plaintiff's rights in the LINDSEY ADELMAN STUDIO trademark.

86.    The goodwill and favorable reputation existing in the LINDSEY ADELMAN STUDIO trademark is a valuable asset belonging to Plaintiffs.  The acts complained of herein have caused Plaintiffs harm, and has the potential for inflicting a substantially greater injury to Plaintiffs' trademark and goodwill.

87.    Defendants' copies of authentic Lindsey Adelman designs, which have been advertised, promoted and sold under marks confusingly similar to the LINDSEY ADELMAN STUDIO trademark were and are manufactured by inferior processes which result in inferior quality products.  By marketing, advertising, and selling Defendants' inferior items under a mark confusingly similar to the LINDSEY ADELMAN STUDIO trademark, Defendants have damaged Plaintiff's goodwill and reputation for the sale of high quality products and will continue to damage Plaintiff's reputation unless enjoined.

88.    The activities of Defendants complained of herein constitute willful and intentional infringement of the LINDSEY ADELMAN STUDIO trademark; are in total disregard of Plaintiffs' rights and were commenced and have continued in spite of Defendants' knowledge that the use of the LINDSEY ADELMAN STUDIO trademark, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiff's rights.

89.    Plaintiffs have suffered (and continue to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including diversion of sales from Plaintiffs to Defendants and a lessening of the goodwill residing in Plaintiffs' LINDSEY ADELMAN STUDIO trademark.  Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm.  Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

**COUNT II - FALSE DESIGNATION OF ORIGIN ("LINDSEY ADELMAN")**

(Pursuant to 15 U.S.C. §1125(a) against all Defendants)

90.     Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

91.     This claim arises under 15 U.S.C. §1125(a) for false designation of origin (infringement of an unregistered trademark).

92.     Plaintiff, Lindsey Adelman has used the unregistered LINDSEY ADELMAN trademark in connection with Plaintiffs' high quality lighting and design products since at least 1996.

93.     The LINDSEY ADELMAN trademark is inherently distinct and has come to identify, in the United States and throughout the world, high quality lighting designs and products originating from Plaintiffs.

94.     The LINDSEY ADELMAN trademark has also acquired secondary meaning among interior designers and consumers of high end interior design products, who associate the LINDSEY ADELMAN mark with the high quality products produced, designed, marketed and sold by Plaintiffs.

95.     Defendants, with full knowledge of the fame and reputation of the LINDSEY ADELMAN trademark, have intentionally, knowingly and willfully infringed upon the trademark by manufacturing and/or selling products bearing marks confusingly similar to the LINDSEY ADELMAN trademark without consent or permission of Plaintiffs, in order to deceive purchasers as to the origin and source of its products.

96.     Defendants have displayed, sold, and advertised (for sale) inferior lighting products and copies of Lindsey Adelman-designs bearing, or by utilizing, marks confusingly similar to the LINDSEY ADELMAN trademark.  These items in fact were not designed, sold, or distributed by, or

pursuant to the authorization of Plaintiffs.

97.     Defendants' use of marks which are confusingly similar to the LINDSEY ADELMAN trademark is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that the goods sold by Defendants are authorized, sponsored or approved by Plaintiffs when, in fact, they are not and never have been.

98.     By reason of Defendants' use of marks confusingly similar to the LINDSEY ADELMAN trademark, in the course of selling their products, without obtaining the authorization of Plaintiffs, Defendants have infringed upon Plaintiff's rights in the LINDSEY ADELMAN trademark.

99.     The goodwill and favorable reputation existing in the LINDSEY ADELMAN trademark is a valuable asset belonging to Plaintiffs.  The acts complained of herein have caused Plaintiffs harm, and has the potential for inflicting a substantially greater injury to Plaintiffs' trademark and goodwill.

100.     Defendants' copies of authentic Lindsey Adelman designs, which have been advertised, promoted and sold under marks confusingly similar to the LINDSEY ADELMAN trademark were and are manufactured by inferior processes which result in inferior quality products. By marketing, advertising, and selling Defendants' inferior items under a mark confusingly similar to the LINDSEY ADELMAN trademark, Defendants have damaged Plaintiff's goodwill and reputation for the sale of high quality products and will continue to damage Plaintiff's reputation unless enjoined.

101.     The activities of Defendants complained of herein constitute willful and intentional infringement of the LINDSEY ADELMAN trademark; are in total disregard of Plaintiffs' rights and were commenced and have continued in spite of Defendants' knowledge that the use of the

LINDSEY ADELMAN trademark, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiff's rights.

102.    Plaintiffs have suffered (and continue to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including diversion of sales from Plaintiffs to Defendants and a lessening of the goodwill residing in Plaintiffs' LINDSEY ADELMAN trademark. Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm.  Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

**COUNT III - FALSE DESIGNATION OF ORIGIN ("BRANCHING BUBBLE")**

(Pursuant to 15 U.S.C. §1125(a) against all Defendants)

103.    Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

104.    This claim arises under 15 U.S.C. §1125(a) for false designation of origin a/k/a infringement of an unregistered trademark.

105.    Plaintiff have used the unregistered BRANCHING BUBBLE trademark in connection with Plaintiffs' high quality lighting products, and their distinct *Branching Bubble* line, since 2006.

106.    The BRANCHING BUBBLE trademark is inherently distinct and has come to identify, in the United States and throughout the world, a specifically designed line of high quality lighting products originating from Plaintiffs.

107.    The BRANCHING BUBBLE trademark has also acquired secondary meaning among interior designers and consumers of high end interior design products who associate the BRANCHING BUBBLE mark with the high quality products produced, designed, marketed and sold by Plaintiffs.

108.    Defendants, with full knowledge of the fame and reputation of the BRANCHING BUBBLE trademark, have intentionally, knowingly and willfully infringed upon the trademark by manufacturing and/or selling products bearing marks confusingly similar to the BRANCHING BUBBLE trademark without consent or permission of Plaintiffs, in order to deceive purchasers as to the origin and source of its products.

109.    Defendants have displayed, sold, and advertised (for sale) inferior lighting products and copies of Lindsey Adelman-designs bearing, or by utilizing, marks confusingly similar to the BRANCHING BUBBLE trademark.  These items in fact were not designed, sold, or distributed by, or pursuant to the authorization of Plaintiffs.

110.    Defendants' use of marks which are confusingly similar to the BRANCHING BUBBLE trademark is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that the goods sold by Defendants are authorized, sponsored or approved by Plaintiffs when, in fact, they are not and never have been.

111.    By reason of Defendants' use of marks confusingly similar to the BRANCHING BUBBLE trademark, in the course of selling their products, without obtaining the authorization of Plaintiffs, Defendants have infringed upon Plaintiff's rights in the BRANCHING BUBBLE trademark.

112.    The goodwill and favorable reputation existing in the BRANCHING BUBBLE trademark is a valuable asset belonging to Plaintiffs.  The acts complained of herein have caused Plaintiffs harm, and has the potential for inflicting a substantially greater injury to Plaintiffs' trademark and goodwill.

113.    Defendants' copies of authentic Lindsey Adelman designs, which have been advertised, promoted and sold under marks confusingly similar to the BRANCHING BUBBLE trademark were and are manufactured by inferior processes which result in inferior quality products.

By marketing, advertising, and selling Defendants' inferior items under a mark confusingly similar to the BRANCHING BUBBLE trademark, Defendants have damaged Plaintiff's goodwill and reputation for the sale of high quality products and will continue to damage Plaintiff's reputation unless enjoined.

114.     The activities of Defendants complained of herein constitute willful and intentional infringement of the BRANCHING BUBBLE trademark; are in total disregard of Plaintiffs' rights and were commenced and have continued in spite of Defendants' knowledge that the use of the BRANCHING BUBBLE trademark, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiff's rights.

115.     Plaintiff has suffered (and continues to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including diversion of sales from Plaintiffs to Defendants and a lessening of the goodwill residing in Plaintiffs' LINDSEY BRANCHING BUBBLE trademark.   Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm.   Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

## COUNT IV - TRADE DRESS INFRINGEMENT

(Pursuant to 15 U.S.C. §1125(a) against all Defendants)

116.     Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

117.     This claim arises under 15 U.S.C. §1125(a) for trade dress infringement.

118.     The Lindsey Adelman Studio *Branching Bubble* lighting design system is inherently distinct and has come to identify, in the United States and throughout the world, a specifically designed high quality lighting product originating from Plaintiffs.

119.    The *Branching Bubble* product line has acquired secondary meaning within the market, including but not limited to interior designers and consumers of high end interior design products, who associate the *Branching Bubble* design and products with the high quality products produced, designed, marketed and sold by Plaintiffs.

120.    The *Branching Bubble* line employs distinctive non-functional features that indicate source of origin and are the protectable property rights of Plaintiffs.

121.    Distinctive non-functional elements constituting Plaintiff's protected *Branching Bubble* trade dress include:  a system of hand-sculpted brass or metallic cylinders connecting to other linear cylinders that evoke limbs of a tree with branches composed of clean geometric lines forming a series of angles that reach multiple end-points, at which an enclosed glass globe light is affixed, creating a bubble of light at various ends of the "branch" system.

122.    The combination of the metal stem, the "branching" arms diverging in angles off the metal stem, and the globe lights affixed to each "branch" is inherently distinctive and has achieved secondary meaning with the consuming public, which recognizes the *Branching Bubble* design as originating from Plaintiffs.

123.    Since introduction of the *Branching Bubble* design in 2006, Plaintiffs have spent considerable resources, including funds and substantial time and labor costs on: print and internet advertising prominently featuring pictures of *Branching Bubble* designs that emphasize its unique and distinctive appearance, together with personal designer appearances at design shows, museums and trade events to support and promote the *Branching Bubble* lighting system.  The result is world-wide fame and recognition of the *Branching Bubble* line that is associated with Plaintiffs.

124.    Plaintiffs have been utilizing the *Branching Bubble* design since 2006, and have been advertising the design for that same period of time, with the intent of promoting the connection by

the public between the plaintiffs and the *Branching Bubble* product line.  Plaintiffs' use of the *Branching Bubble* design predates any use by Defendants of the same or similar design.

125.    Plaintiffs have exhibited the *Branching Bubble* design at the Smithsonian Design Museum, the Cooper Hewitt National Design Museum, and Design Miami.  Further, the *Branching Bubble* lighting products have been sold at BBDW in New York, and at Nilufur Gallery in Milan, which promotes Plaintiffs' work globally.  Plaintiffs have further displayed the *Branching Bubble* chandeliers at trade shows, and in internet listings on major internet search engines.  The *Branching Bubble* design has received a number of awards and other forms of public recognition.  Thus, the advertising undertaken by the Plaintiffs has conferred secondary meaning on the *Branching Bubble* design.

126.    As of 2017, at least fifty percent of Lindsey Adelman Studio revenue is attributable to the *Branching Bubble* collection.

127.    In flagrant disregard of Plaintiffs' rights, Defendants are intentionally, knowingly and willfully infringing the Plaintiffs' protected *Branching Bubble* trade dress by manufacturing, displaying, advertising and selling, through its retail stores and over the internet, products bearing a design so nearly identical to the *Branching Bubble* design that they are likely to cause confusion in the mind of the consuming public.

128.    Defendants offer for sale copies of the *Branching Bubble* chandeliers and lighting designs that are mass-produced, at substantially reduced prices.

129.    The overall impression created by Defendants' knockoffs and the Plaintiffs' original products is that they are substantially similar to one another.  Each employs a metal stem with branching metal arms and affixes glass globes to each of the metal "branches."  The basic outlines and design silhouettes of the products are substantially similar.  And Defendants have employed

similar colors creating an overall impression and feel that evokes and trades off of the Branching Bubble designs sold by Plaintiffs.

130.    Indeed, Defendants, through their own advertising descriptions, attempt to heighten the association between their inferior products and Plaintiff's authentic goods by using the words "branching" "bubble" on their websites, while also trading on the Lindsey Adelman marks.

131.    The parties' products are sold in the same geographic areas.  France and Son and Lindsey Adelman Studio each have a showroom in New York City.

132.    The parties' products are targeted at the same groups of consumers. However, Defendants also cater to customers who might otherwise aspire to own authentic *Branching Bubble* products, but are unable or unwilling to pay for the genuine product, so instead acquire Defendants' cheaper copies.

133.    Defendants and Plaintiffs are in direct competition with one another.

134.    The use by Defendants of the Lindsey Adelman marks in tagging various web pages, along with the use of the words "branch" and "bubble" in their product descriptions, indicates bad faith in marketing their products.

135.    While *Branching Bubble* products are, in general, purchased by more sophisticated consumers, those same consumers, when viewing Defendants' products, are likely to assume that the presence of the *Branching Bubble* design in Defendants' products indicates association or sponsorship between the two.

136.    Defendants have used designs and words likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants and Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiffs.  Prospective purchasers are likely to believe Plaintiffs sponsored or otherwise approved of Defendants' use of the *Branching Bubble* design, when, in reality, Plaintiffs have never sponsored or approved the Defendants' use.

Further, prospective purchasers are attracted to Defendants' designs by virtue of their similarity to the *Branching Bubble* designs, and even if those same purchasers are not actually confused at the time of purchase, they intend others to believe that such products did in fact originate from Plaintiff. Other consumers are also likely to be confused as to the source of Defendants' designs when observed in a post-sale context.

137.    The goodwill and favorable reputation existing in the *Branching Bubble* design is a valuable asset belonging solely and exclusively to the plaintiffs.  The acts complained of herein have caused harm to Plaintiffs, and if not preliminarily and permanently enjoined, will continue to harm Plaintiffs' intellectual property and goodwill.

138.    Defendants' activities constitute willful and intentional infringement of the Plaintiffs' trade dress, are in total disregard of Plaintiffs' rights, were commenced and have continued in spite of Defendants' knowledge that the use of Plaintiffs' trade dress, or a copy or colorable imitation thereof, was and is in direct contravention of Plaintiffs' rights.

139.    Plaintiffs have suffered and continue to suffer irreparable harm as a result of Defendants' actions, including but not limited to diversion of sales from Lindsey Adelman Studio to Defendants and a lessening of the goodwill residing in Plaintiffs' Branching Bubble designed lighting system.

140.    Plaintiffs' remedy at law is not adequate to compensate them for the injuries suffered and threatened.

141.    As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages in an amount to be determined at trial.

### COUNT V – TRADEMARK DILUTION ("LINDSEY ADELMAN STUDIO")

(Pursuant to 15 U.S.C. §1125(C) against all Defendants)

142.    Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

143.    This claim arises under 15 U.S.C. §1125(c) for trademark dilution of Plaintiffs' registered LINDSEY ADELMAN STUDIO mark.

144.    The LINDSEY ADELMAN STUDIO registered trademark is inherently distinct and has come to identify, in the United States and throughout the world, high quality lighting designs and products originating from Plaintiffs.

145.    The LINDSEY ADELMAN STUDIO trademark has also acquired secondary meaning among interior designers and consumers of high end interior design products who associate the registered mark with the high quality products produced, designed, marketed and sold by Plaintiffs.

146.    The LINDSEY ADELMAN STUDIO trademark is famous, as further evinced by: widespread marketing and advertising under the mark; unsolicited media attention garnered by the mark; accolades and acclaim bestowed upon Plaintiffs' lighting design products; exhibitions of Lindsey Adelman Studio designs in museums and art houses; and taste-making customers who have trumpeted the qualities and virtues of the products sold under the mark.

147.    Plaintiffs commenced use of the famous LINDSEY ADELMAN STUDIO trademark in or before 2006.

148.    After Plaintiffs established the mark as famous, Defendants, with full knowledge of the fame and reputation of the LINDSEY ADELMAN STUDIO trademark, have intentionally, diluted and infringed upon the trademark by manufacturing and/or selling products bearing marks confusingly similar to the LINDSEY ADELMAN STUDIO trademark without consent or permission of Plaintiffs.

149.    As a result of Defendants' conduct described herein, the distinctive quality of the

LINDSEY ADELMAN STUDIO trademark is being diluted.

150.    Defendants' have damaged, and are continuing to damage, Plaintiff's goodwill and reputation for the sale of high quality products and will continue doing so unless enjoined.

151.    The activities of Defendants complained of herein constitute willful and intentional dilution of the LINDSEY ADELMAN STUDIO trademark, are in total disregard of Plaintiffs' rights, and were commenced and have continued in spite of Defendants' knowledge that the use of the LINDSEY ADELMAN STUDIO trademark, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiff's rights.

152.    Plaintiffs have suffered (and continue to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including false association between Plaintiffs' goods and Defendants' and a lessening of the goodwill residing in Plaintiffs' LINDSEY ADELMAN STUDIO trademark.  Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm. Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

## COUNT VI – TRADEMARK DILUTION ("LINDSEY ADELMAN")

(Pursuant to 15 U.S.C. §1125(C) against all Defendants)

153.    Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

154.    This claim arises under 15 U.S.C. §1125(c) for trademark dilution of Plaintiffs' unregistered LINDSEY ADELMAN mark.

155.    The LINDSEY ADELMAN trademark is inherently distinct and has come to identify, in the United States and throughout the world, high quality lighting designs and products originating from Plaintiffs.

156.    The LINDSEY ADELMAN trademark has also acquired secondary meaning among

interior designers and consumers of high end interior design products who associate the mark with the high quality products produced, designed, marketed and sold by Plaintiffs.

157.    The LINDSEY ADELMAN trademark is famous, as further evinced by: widespread marketing and advertising under the mark; unsolicited media attention garnered by the mark; accolades and acclaim bestowed upon Plaintiffs lighting design products; exhibitions of *Lindsey Adelman* designs in museums and art houses; and taste-making customers who have trumpeted the qualities and virtues of the products sold under the mark.

158.    Plaintiffs commenced use of the famous LINDSEY ADELMAN trademark in or before 2006.

159.    After Plaintiffs established the mark as famous, Defendants, with full knowledge of the fame and reputation of the LINDSEY ADELMAN trademark, have intentionally, diluted and infringed upon the mark by manufacturing and/or selling products bearing marks confusingly similar to the LINDSEY ADELMAN mark without consent or permission of Plaintiffs.

160.    As a result of Defendants' conduct described herein, the distinctive quality of the LINDSEY ADELMAN mark is being diluted.

161.    Defendants' have damaged, and are continuing to damage, Plaintiff's goodwill and reputation for the sale of high quality products and will continue doing so unless enjoined.

162.    The activities of Defendants complained of herein constitute willful and intentional dilution of the LINDSEY ADELMAN trademark; are in total disregard of Plaintiffs' rights and were commenced and have continued in spite of Defendants' knowledge that the use of the LINDSEY ADELMAN trademark, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiff's rights.

163.    Plaintiffs have suffered (and continue to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including false association between Plaintiffs'

goods and Defendants' and a lessening of the goodwill residing in Plaintiffs' LINDSEY ADELMAN trademark. Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm. Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

### COUNT VII – TRADEMARK DILUTION ("BRANCHING BUBBLE")

(Pursuant to 15 U.S.C. §1125(C) against all Defendants)

164. Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

165. This claim arises under 15 U.S.C. §1125(c) for trademark dilution of Plaintiffs' unregistered BRANCHING BUBBLE mark.

166. The BRANCHING BUBBLE trademark is inherently distinct and has come to identify, in the United States and throughout the world, high quality lighting designs and products originating from Plaintiffs.

167. The BRANCHING BUBBLE trademark has also acquired secondary meaning among interior designers and consumers of high end interior design products who associate the mark with the high quality products produced, designed, marketed and sold by Plaintiffs.

168. The BRANCHING BUBBLE trademark is famous, as further evinced by: widespread marketing and advertising under the mark; unsolicited media attention garnered by the mark; accolades and acclaim bestowed upon Plaintiffs lighting design products; exhibitions of *Lindsey Adelman* designs in museums and art houses; and taste-making customers who have trumpeted the qualities and virtues of the products sold under the mark.

169. Plaintiffs commenced use of the famous BRANCHING BUBBLE trademark in or before 2006.

170. After Plaintiffs established the mark as famous, Defendants, with full knowledge of

the fame and reputation of the BRANCHING BUBBLE trademark, have intentionally, diluted and infringed upon the mark by manufacturing and/or selling products bearing marks confusingly similar to the BRANCHING BUBBLE mark without consent or permission of Plaintiffs.

171.    As a result of Defendants' conduct described herein, the distinctive quality of the BRANCHING BUBBLE mark is being diluted.

172.    Defendants' have damaged, and are continuing to damage, Plaintiff's goodwill and reputation for the sale of high quality products and will continue doing so unless enjoined.

173.    The activities of Defendants complained of herein constitute willful and intentional dilution of the BRANCHING BUBBLE trademark; are in total disregard of Plaintiffs' rights and were commenced and have continued in spite of Defendants' knowledge that the use of the BRANCHING BUBBLE trademark, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiff's rights.

174.    Plaintiffs have suffered (and continue to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including false association between Plaintiffs' goods and Defendants' and a lessening of the goodwill residing in Plaintiffs' BRANCHING BUBBLE trademark.   Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm.  Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

### COUNT VIII – TRADE DRESS DILUTION ("BRANCHING BUBBLE")

(Pursuant to 15 U.S.C. §1125(C) against all Defendants)

175.    Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

176.    This claim arises under 15 U.S.C. §1125(c) for trademark dilution of Plaintiffs'

unregistered *Branching Bubble* product trade dress.

177.    The BRANCHING BUBBLE trade dress is inherently distinct and has come to identify, in the United States and throughout the world, high quality lighting designs and products originating from Plaintiffs.

178.    The BRANCHING BUBBLE trade dress has also acquired secondary meaning among interior designers and consumers of high end interior design products who associate the trade dress with the high quality products produced, designed, marketed and sold by Plaintiffs.

179.    The BRANCHING BUBBLE trade dress is famous, as further evinced by: widespread marketing and advertising depicting the product's protected trade dress; unsolicited media attention garnered by the BRANCHING BUBBLE line; accolades and acclaim bestowed upon Plaintiffs' BRANCHING BUBBLE products; exhibitions of BRANCHING BUBBLE designs in museums and art houses; and taste-making customers who have trumpeted the qualities and virtues of the BRANCHING BUBBLE products sold by Plaintiffs.

180.    Plaintiffs commenced use of the famous BRANCHING BUBBLE product(s) and associated dress in or before 2006.

181.    After Plaintiffs established the trade dress as famous, Defendants, with full knowledge of the fame and reputation of the BRANCHING BUBBLE trade dress, have intentionally, diluted and infringed upon the trade dress by manufacturing and/or selling products bearing marks confusingly similar to the BRANCHING BUBBLE products without consent or permission of Plaintiffs.

182.    As a result of Defendants' conduct described herein, the distinctive quality of the BRANCHING BUBBLE trade dress is being diluted.

183.    Defendants' have damaged, and are continuing to damage, Plaintiff's goodwill and reputation for the sale of high quality products and will continue doing so unless enjoined.

184.    The activities of Defendants complained of herein constitute willful and intentional dilution of the BRANCHING BUBBLE trade dress; are in total disregard of Plaintiffs' rights and were commenced and have continued in spite of Defendants' knowledge that the use of the BRANCHING BUBBLE trade dress, or a copy or a colorable imitation thereof, was and is in direct contravention of Plaintiff's rights.

185.    Plaintiffs have suffered (and continue to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including false association between Plaintiffs' goods and Defendants' and a lessening of the goodwill residing in Plaintiffs' BRANCHING BUBBLE trade dress.   Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm.  Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

## COUNT IX – COMMON LAW UNFAIR COMPETITION

### (Against all Defendants)

186.    Plaintiffs repeat and re-allege every allegation contained in paragraphs 1 through 75 as fully set forth herein.

187.    Through the above described conduct, Defendants have misappropriated the labors and expenditures of Plaintiffs in bad faith for the purpose of misleading the public and exploiting Plaintiff's work for their own improper commercial benefit and gain.

188.    Defendants' bad faith rises to level of passing off by virtue of their widespread use of the Lindsey Adelman marks in connection the sale of inferior lighting design copies.  Defendants' utilize the Lindsey Adelman marks in the marketing, sale and promotion of their offerings, intentionally misleading the public as to source and authenticity of their products.  In so doing, Defendants pass off products as authentic Lindsey Adelman designs when in fact they are not.

189.    The consuming public is likely to be confused as to the source and origin of the goods offered for sale by Defendants, who utilize, rely upon, and copy the Lindsey Adelman marks in the sale and promotion of their goods.  Upon information and belief, actual confusion has occurred as a result of Defendants' bad faith conduct.

190.    The activities of Defendants complained of herein constitute unfair competition; are in total disregard of Plaintiffs' rights and were commenced and have continued in spite of Defendants' knowledge that their conduct was in bad faith and in direct contravention of Plaintiffs' rights.

191.    Plaintiffs have suffered (and continue to suffer) irreparable harm and damages as a result of Defendants' above-described activities, including false association between the parties and a lessening of the goodwill residing in Plaintiffs' Lindsey Adelman marks.  Defendants will, unless preliminarily and permanently restrained and enjoined, continue to act in the unlawful manner complained of herein, to Plaintiff's irreparable harm.  Plaintiff's remedy at law is not adequate to compensate them for the injuries suffered and threatened.

## DEMAND

**WHEREFORE**, Plaintiffs, Lindsey Adelman Studio, LLC and Lindsey Adelman demand entry of Final Judgment against Defendants for:

A.      Preliminary and permanent injunctive relief enjoining Defendants, Stilnovo USA LLC, France and Son, Inc., and Wen Chin Wu, a/k/a Kevin Wu, their agents, employees, servants, privies, successors, and assigns, and all persons acting in concert, participation or combination with the Defendants, from (i) using the Lindsey Adelman marks in any manner, and from making, using or promoting any mark that is similar thereto particularly in connection with interior and lighting design sales, concepts or products; (ii) making, using, offering for sale or selling any lighting fixture through the use of any name, mark or indicator of origin that is confusingly similar the Lindsey Adelman marks

(including the Branching Bubble mark, its trade dress, the Anges mark and any indicators of origin utilized by Plaintiff); (iii) manufacturing, promoting, advertising and selling any product through the use of the Plaintiffs' protected trade dress and any design or trade dress similar thereto; (iv) ordering Defendants to account for all inventory, goods and materials which contain, depict, utilize or derive from the Lindsey Adelman marks, and at Defendants's sole cost and expense, permanantly destroy such infringing and diluting goods so that such goods are not sold or transferred or otherwise enter the stream of commerce;

B.      An award of damages in a sum to be determined at trial accounting for all losses by Plaintiffs, and/or all gains, profits and advantages derived by Defendants through the sale, advertisement, and promotion of products that uses, incorporate, infringe or dilute the Lindsey Adelman marks, or any marks or designs similar thereto;

C.      On submission of evidence supporting same, treble damages, punitive damages, reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs in the prosecution of this action; and

D.      Such other relief as this Court deems just and proper.

DATED: September 6, 2018

Respectfully submitted,

BECKER & POLIAKOFF LLP
By: */s/ Oliver Edwards VII*
        Gary C. Rosen, Esq.
        NY Bar No. 5581616
        (*Admission to the SDNY Bar pending*)
        Kevin Markow, Esq.
        FL Bar No. 66982
        (*pro hac vice application pending*)
        Oliver Edwards VII (OE1067)
        45 Broadway, 17th Floor
        New York, New York 10006
        (212) 599-3322
        grosen@beckerlawyers.com
        kmarkow@beckerlawyers.com
        oedwards7@beckerlawyers.com